FILED IN CLERK'S OFFICE
U.S.D.C.-Atlanta

MAY 2 0 2005

LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| CHRIS R. MELLOT, Individually And On Behalf Of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CHOICEPOINT INC., CHOICEPOINT INC. GROUP BENEFITS COMMITTEE, COMPENSATION AND BENEFITS COMMITTEE, TERRENCE MURRAY, JOHN J. HAMRE, JOHN B McCOY, BONNIE G HILL, JOHN H. KARR, STEVEN W. SURBAUGH, and JOHN DOES 1-30,<br><br>Defendants. | No.: **1 05 CV 1340**<br> ~~1 05 CV 1336~~<br><br>**WBH**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE EMPLOYER RETIREMENT INCOME SECURITY ACT** |

Plaintiff alleges the following based upon the investigation of plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by ChoicePoint Inc. ("ChoicePoint" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about ChoicePoint, press releases and other public statements issued by them, and media

FORMS RECEIVED
Consent To US Mag. _____
Pretrial Instructions _____
Title VII-NTC

reports about them, and plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I. NATURE OF THE ACTION

1.      This is class action for breach of fiduciary duty brought pursuant to § 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C § 1132, on behalf of the participants in and beneficiaries of the ChoicePoint Inc. Profit Sharing Plan (the "Plan").

2.      Plaintiff is a former employee of ChoicePoint and participated in the Plan at times during the period from November 24, 2003 through March 3, 2005 (the "Class Period").

3.      Plaintiff's claims arise from the failure of the Defendants, who are fiduciaries of the Plan (as detailed below), to act solely in the interest of the participants and beneficiaries of the Plan and to exercise the required care, skill, prudence, and diligence in administering the Plan and investing its assets. The Defendants violated their fiduciary obligations to the Plan under ERISA §§ 404 and 405, 29 U.S.C §§ 1104 and 1105 by, among other things:

> (a)      failing to prudently manage the assets of the Plan by maintaining investment in shares of ChoicePoint stock for the Plan under

2

circumstances in which Defendants could not possibly have believed that continued investment in ChoicePoint stock was prudent;

(b)    failing to properly monitor the Plan fiduciaries to ensure that they were prudently and loyally serving the interests of Plan participants and, in connection therewith, failing to remove and replace fiduciaries whom they knew or should have known were acting disloyally and imprudently with respect to the Plan and Plan's assets;

(c)    failing to provide complete and accurate information to the Plan's participants and beneficiaries and to refrain from providing false information or concealing material information regarding the Plan's investment options such that participants can make informed decisions with regard to investment options available under the Plan; and

(d)    failing to avoid conflicts of interests and to resolve them promptly when they occur by continuing to allow ChoicePoint stock as an investment for the Plan during the Class Period, by failing to engage independent fiduciaries and/or advisors who could make independent judgments concerning the Plan's investment in ChoicePoint stock and by failing to notify the Department of Labor about the information which made employer stock an unsuitable investment for the Plan

4.    Plaintiff alleges that Defendants' breaches of fiduciary duty with respect to the Plan's holding and acquisition of ChoicePoint stock resulted in losses to the Plan which the Defendants are personally liable to make good to the Plan pursuant to ERISA §§ 409 and 502(a)(2), 29 U.S C. §§ 1109 and 1132(a)(2).

5.    Because his claims apply to the Plan's participants and beneficiaries as a

whole, and because ERISA authorizes plan participants such as Plaintiff to sue for Plan-wide relief for breaches of fiduciary duty, Plaintiff brings this action on behalf of himself and all participants and beneficiaries of the Plan during the Class Period.

6    Because the information and documents on which Plaintiff's claims are based are for the most part solely in Defendants' possession, certain of Plaintiff's allegations are by necessity upon information and belief. At such time as Plaintiff has had the opportunity to conduct discovery, Plaintiff will, to the extent necessary and appropriate, seek leave to amend the Complaint to add such other additional facts as are discovered that further support his claims.

## II. JURISDICTION AND VENUE

7    **Subject Matter Jurisdiction.** This is a civil enforcement action for breach of fiduciary duty brought pursuant to ERISA § 502(a), 29 U S.C. § 1132(a). This Court has original, exclusive subject matter jurisdiction over this action pursuant to the specific jurisdictional statute for claims of this type, ERISA § 502(e)(1), 29 U S.C. § 1132(e)(1)

8.    **Venue.** Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U S.C. § 1132(e)(2), because some or all of the fiduciary breaches for which relief is sought occurred in this District.

## III. THE PARTIES

4

*Plaintiff*

9.      Plaintiff Curtis R. Mellot ("Mellot") is a citizen of the State of New Jersey and lives in Middlesex County. Mellot was an employee of ChoicePoint during the Class Period  Mellot is a "participant" in the Plan pursuant to ERISA § 3(7), 29 U S.C. § 1102(7) and held ChoicePoint stock in his individual plan retirement account. Plaintiff brings this action to recover losses to the Plan. The fiduciaries of the Plan acquired and held ChoicePoint stock for the benefit of Mellot and other participants during the Class Period.

*Defendants*

10.      Defendant ChoicePoint Inc. is a Georgia corporation with principal executive offices located at 1000 Alderman Drive, Alpharetta, Georgia 30005. ChoicePoint is the Plan's sponsor, is charged with appointing Plan fiduciaries, and exercises discretionary authority and control with respect to management, administration and disposition of the Plan's assets.

11.      Defendant ChoicePoint Inc  Group Benefits Committee (the "Benefits Committee"), is designated a fiduciary of the Plan, oversees the Plan and hears all appeals for benefits   The Benefits Committee and its individual members are fiduciaries of the Plan in that they exercise discretionary authority and control with respect to management, administration and disposition of the Plan's assets

12.    Defendant Compensation and Benefits Committee (the "Director Committee") is comprised of members from the Company's Board of Directors (the "Board"). The Director Committee appoints the members of the Benefits Committee. In the absence of any appointments by the Director Committee, the Company is charged with making such appointments.   The Director Defendants also exercise discretionary authority and control with respect to the management, administration and disposition of the Plan's assets

13.    Defendant Terrence Murray ("Murray") served during the Class Period as a member and Chairman of the Director Committee.

14.    Defendant John J. Hamre ("Hamre") served during the Class Period as a member of the Director Committee

15    Defendant John B McCoy ("McCoy") served during the Class Period as a member of the Director Committee

16.    Defendant Bonnie G  Hill ("Hill") served during the Class Period as a member of the Director Committee.

17    Defendants Murray, Hamre, McCoy and Hill are referred to herein as the Director Defendants.  The Director Defendants are fiduciaries of the Plan and are charged with appointing the members of the Benefits Committee and exercise discretionary authority and control with respect to the management, administration and

6

disposition of the Plan's assets.

18.    Defendant John H. Karr ("Karr") signed the Plan's Form 11-K on June 28, 2004, for the year ended December 31, 2003.  Karr is listed in the Company's Form 10-K for the fiscal year ended December 31, 2004, as Vice President of Compensation and Benefits.

19.    Defendant Steven W. Surbaugh, ("Surbaugh") served during the Class Period as the Company's Chief Financial Officer ("CFO").  According to the Plan's 2003 11-K, Surbaugh as CFO is a named fiduciary and administrator of the Plan.

20.    Defendant John Does 1-5 served during the Class Period as the Company's Vice President of Insurance and Benefits ("VPIB").  According to the Plan's 2003 11-K, John Does 1-5, as VPIBs, are named fiduciaries and administrators of the Plan.

21.    Defendants Karr, Surbaugh and John Doe 1-5 are referred to herein as the Plan Defendants.  The Plan Defendants are fiduciaries of the Plan with discretionary authority and control with respect to the management, administration and disposition of the Plan's assets.

22.    Defendants John Does 6-30 are other persons and entities who are fiduciaries of the Plan but whose identities are currently not known.  At all relevant times, John Does 6-30 were responsible for, among other things, establishing the

7

compensation policies and practices regarding the Plan, reviewing the annual financial performance of the Plan, or for some other Plan-related oversight. In these capacities, John Does 6-30 exercised discretionary authority respecting the Plan's management and/or administration and are fiduciaries of the Plan within the meaning of ERISA, 29 U S C. § 1002(21).

23     Should discovery reveal the identities of presently unknown co-fiduciaries and other participants in the wrongdoing outlined herein, Plaintiff will seek leave to amend this Complaint to identify those parties or add new parities and/or new claims

## IV. THE PLAN

24.     The ChoicePoint Inc. Profit Sharing Plan is an employee benefit plan within the meaning of ERISA §§ 3(3), and 3(2)(A), 29 U.S.C. §§ 1002(3) and 1002(2)(A).

25.     The Plan is a "defined contribution" or "individual account" plan within the meaning of ERISA § 3(34), 29 U S C. § 1002(34).

26.     The Plan is subject to the provisions of the Employee Retirement Income Security Act of 1974, as amended.

27.     The Plan is sponsored by ChoicePoint   ChoicePoint is charged with appointing Plan fiduciaries in the absence of their appointment by others, and exercises discretionary authority and control with respect to management, administration and

disposition of the Plan's assets.

28.     The ChoicePoint Inc. Group Benefits Committee is designated a fiduciary of the Plan, oversees the Plan and hears all appeals for benefits   The Benefits Committee and its individual members are fiduciaries of the Plan in that they exercise discretionary authority and control with respect to management, administration and disposition of the Plan's assets.

29    The Compensation and Benefits Committee is comprised of members from the Company's Board of Directors (the "Board").   The Director Committee appoints the members of the Benefits Committee.  In the absence of any appointments by the Director Committee, the Company is charged with making such appointments. The Director Committee and its members – Defendants Hamre, McCoy and Hill (the "Director Defendants") – are all fiduciaries of the Plan with appointing and monitoring duties.    They also exercise discretionary authority and control with respect to management, administration and disposition of the Plan's assets.

30    The Plan Defendants are individuals that have been designated fiduciaries of the Plan with authority to oversee the administration of the Plan.   They each exercise discretionary authority and control with respect to the management, administration and disposition of the Plan's assets.

31.     The Plan covers all eligible salaried employees of ChoicePoint and its

9

subsidiaries who have completed 90 days of service.

32.    Participants may make basic contributions from 1% to 6% of his or her total gross salary through payroll deductions on a pretax or after-tax basis  Participant contributions are allocated among investment options, as directed by the individual participants.  These investment options include, but are not limited to, publicly traded mutual funds.

33    One of the investment options available is the ChoicePoint Stock Fund (the "Stock Fund"), which is a unitized fund that holds invests in the common stock of ChoicePoint ("ChoicePoint Stock") and a money market fund.

34.    The Company makes an annual minimum matching contribution of 25% of the basic contribution made by participants each day period, net of any withdrawals during the year   All matching contributions are made to the Stock Fund and are not permitted to be transferred to another investment option unless the participant is separated from service or over 55 years old

## V. FIDUCIARY STATUS

### A.    Named Fiduciaries

35.    ERISA requires every Plan to provide for one or more "named fiduciaries," who will have "authority to control and manage the operation and administration of the Plans."  ERISA § 402(a)(1), 29 U S.C. § 1102(a)(1).

10

**B.**   *De Facto* **Fiduciaries.**

36.   ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under ERISA § 402(a)(1), but also any other persons who in fact act as fiduciaries, perform fiduciary functions, or hold fiduciary authority  ERISA makes a person (including a juridical person such as ChoicePoint) a fiduciary

> to the extent .   he exercises any discretionary authority or discretionary control respecting management of such Plans or exercises any authority or control respecting management or disposition of its assets . . . or . . . has any discretionary authority or discretionary responsibility in the administration of such Plans.

ERISA § 3(21)(A), 29 U.S.C § 1002(21)(A).

37   Appointing and removing fiduciaries is itself a fiduciary function and persons having this power of appointment and removal are *de facto* fiduciaries

38.   Employers and their directors and officers also act in a *de facto* fiduciary capacity under ERISA when they mislead employees about the character and prospects of the company for the purpose of affecting the employees' ERISA Plan elections.

**C.**   **All Defendants Are Fiduciaries.**

39   Defendants are fiduciaries of the Plan during the Class Period because they were so named and/or because they exercised discretionary authority or control respecting management of the Plan or management or disposition of the Plan's assets

or had discretionary authority or responsibility in the administration of the Plan.

40.     Defendant ChoicePoint is a fiduciary of the Plan by virtue of its position as a Plan Sponsor and/or a Named Fiduciary within the meaning of ERISA § 402(a)(2), 29 U S.C. § 1102(a)(2).  In addition, ChoicePoint is a *de facto* fiduciary within the meaning of ERISA § 3(21)(A)(I), 29 U S.C. § 1002(21)(A)(I), in that it possessed and exercised discretionary authority and control with respect to the management and administration of the Plan and authority and control with respect to management or disposition of the Plan's assets.

41.     The Benefits Committee is a designated fiduciary of the Plan and is charged with administering the Plan.

42     The Director Defendants are designated fiduciaries of the Plan in that they are charged with appointing and monitoring other fiduciaries.

43     The Plan Defendants are named fiduciaries of the Plan in that they were so designated by the Plan and/or appointed as such by appointing fiduciaries.

44.     ERISA permits fiduciary duties to be shared among various individuals and entities  Given ERISA's functional conception of a fiduciary, absent formal discovery, it is impossible to know which fiduciaries exercised which fiduciary functions  Based on the information available to Plaintiff, the Defendants' fiduciary responsibility was at least partially allocated among ChoicePoint, the Benefits

Committee and its members, the Director Defendants, the Plan Defendants and John Does 6-30.

## VI. FACTUAL BACKGROUND OF BREACHES OF FIDUCIARY DUTY

45.     ChoicePoint was formed in 1997 as a spin off from Equifax, Inc. ChoicePoint compiles and maintains personal profiles of U.S. consumers and purportedly has billions of records on both individuals and businesses. These profiles include information such as Social

Security numbers, credit histories, criminal records, other public records, and/or other highly sensitive materials. The Company sells this data to businesses and government agencies

46     During the Class Period, ChoicePoint and its senior officers – Derek V. Smith ("Smith"), the Company's Chairman and Chief Executive Officer and Douglas C. Curling ("Curling"). the Company's President, Chief Operating Officer and Director – made material misrepresentations claiming that ChoicePoint had unique capabilities and systems in place to enable the responsible use of information while ensuring the protection of personal privacy. ChoicePoint and its senior officers also falsely claimed that the recent theft of consumer data was unprecedented and that the Company welcomes national discussion on how to ensure that information is used responsibly

47     In February 2005, however, the public learned that ChoicePoint did not,

13

in fact, have adequate controls in place to protect the privacy of the information it compiled and sold   Indeed, for more than a year, criminals allegedly posing as legitimate businessmen and using what privacy consultants termed "low-tech" methods, were able to open fifty (50) accounts at ChoicePoint and access records of tens, possibly hundreds, of thousands, of U S. citizens.  According to a February 22, 2005 Associated Press article, the criminals accessed records containing private, personal information including but not limited to, Social Security numbers, names, addresses, and credit reports

48.    The Company and its senior officers became aware of the criminals' access of its records in October of 2004.  Despite having knowledge of this serious threat to consumer privacy and the inaccuracy of Defendants' representations concerning the security of ChoicePoint's data, the Company and its senior officers did not disclose any details of the incident until February of this year   Notwithstanding their nondisclosure, Smith and Curling sold over $18 million of ChoicePoint Stock between the time they discovered the criminals' access and their initial disclosure of the breach of their system on February 14, 2005   This insider trading is not only suspicious in timing, it is also suspicious in amount   Indeed, *MarketWatch* reported on March 4, 2005 that these executives sold more shares since the beginning of 2005 than any insiders in the last five years

14

49     All this insider selling of ChoicePoint Stock took place while the Company continued to match participant contributions with ChoicePoint Stock Unlike the Company's officers, however, Plan participants could not sell or transfer out of their ChoicePoint Stock

50     Amazingly, on March 2, 2005, the public learned the recent incident was not "unprecedented" as the Company had first claimed.  Rather, a similar incident had occurred five years prior involving the disclosure of 7,000 records.  The public market also learned, after the market closed on March 3, 2005, that despite the Company's claims that it welcomed a national debate on how to insure that information is used responsibly, ChoicePoint had for years heavily lobbied members of Congress to avoid legislation ensuring tighter controls over the use and dissemination of the type of information that ChoicePoint sells.

51     When the Company and its senior officers belatedly acknowledged that the security of ChoicePoint's database had been breached and when the truth about their prior conduct and misrepresentations began to emerge, the market's reaction to the disclosures was swift and severe. Following these disclosures, the market price of ChoicePoint's common stock dropped from a high of $47 95 per share during the Class Period to as low as $37.65 per share on March 4, 2005.

52     The fiduciaries of the Plan had a duty to the Plan and its participants to

15

prudently invest the Plan's assets.  Defendants breached these fiduciary duties by continuing to allow the operation of the Stock Fund and by continued to allow investments in ChoicePoint Stock when they knew or should have known that such an investment was imprudent

## VII. CLASS ACTION

53    Plaintiff brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure in his representative capacity on behalf of themselves and a class ("Class") of all persons similarly situated, defined as follows.

> All participants and beneficiaries in the ChoicePoint Inc. Profit Sharing Plan (the "Plan") for whose accounts the fiduciaries of the Plan made or maintained investments in the common stock of ChoicePoint Inc. between November 24, 2003 through March 3, 2005 (the "Class Period").

54.    Plaintiff meets the prerequisites of Rule 23(a) to bring this action on behalf of the Class because

    a    **Numerosity.** The Class consists of thousands of individuals and is so numerous that joinder of all members as individual plaintiffs is impracticable

    b.    **Commonality.** There are questions of law and fact common to the Class  Such common questions include, but are not limited to:

        i.    Whether Defendants are fiduciaries;

        ii.    Whether Defendants breached their fiduciary obligations to

16

the participants and beneficiaries of the Plan by failing to prudently manage the assets of the Plan by continuing to hold substantial amounts of ChoicePoint Stock under circumstances in which Defendants could not have reasonably believed that such was in keeping with how a prudent trustee would operate;

iii   Whether Defendants breached their fiduciary obligations to the participants and beneficiaries of the Plan by causing the Plan to make and maintain investments in ChoicePoint Stock, when it was not prudent to do so,

iv   Whether Defendants breached their fiduciary obligations to the participants and beneficiaries of the Plan under ERISA by providing incomplete and inaccurate information to participants regarding ChoicePoint Stock;

v   Whether Defendants breached their fiduciary obligations to the participants and beneficiaries of the Plan by failing to prudently monitor them so that the Plan's and participant's interests were adequately protected and served;

vi.   Whether Defendants breached their fiduciary obligations to the participants and beneficiaries of the Plan to provide complete and accurate information concerning ChoicePoint's financial well-being and the risk of ChoicePoint Stock as a retirement investment,

vii.   Whether Defendants breached their duty to avoid conflicts of interest and to promptly resolve them when they occurred by continuing to allow ChoicePoint Stock as an investment for the Plan and by failing to engaged independent fiduciaries and/or advisors who could make independent judgments concerning the prudence of the Plan's investments,

viii.   Whether Defendants, by failing to comply with their

17

specific fiduciary responsibilities under ERISA § 404(a), 29 U.S.C. § 1104(a)(1), enabled co-fiduciaries to commit violations of reasonable efforts to remedy the breaches, and,

ix.   Whether, as a result of fiduciary breaches engaged in by the Defendants, the Plan and its participants and beneficiaries suffered losses

c.   **Typicality.** Plaintiff's claims are typical of the claims of the Class

d.   **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Class  Plaintiff has no interests that are antagonistic to or in conflict with the interests of the Class as a whole, and Plaintiff has engaged competent counsel experienced in class actions and
complex litigation

55   This action is maintainable as a class action for the following independent reasons·

a.   Given ERISA's imposition of a uniform standard of conduct on ERISA fiduciaries, the prosecution of separate actions by individual members of the Class would create the risk of inconsistent adjudications which would establish incompatible standards of conduct for the Defendants with respect to their obligations under the Plan. Fed. R  Civ. P. 23(b)(1)(A).

b   The prosecution of separate actions by members of the Class would

18

create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests. Fed. R Civ P 23(b)(1)(B).

        c.    The Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole  Fed. R Civ P 23(b)(2).

        d.    Questions of law and fact common to members of the Class predominate over any questions affecting only individual members, and the class action is superior to other available methods for the fair and efficient adjudication of the controversy  Fed. R Civ. P. 23(b)(3).

56.    There are one or more putative or certified securities class action cases pending against ChoicePoint and certain other defendants.  The claims herein are brought under ERISA and related principles of federal common law and are not being asserted by the plaintiffs in the securities class actions. Indeed, Plaintiff's claims herein cannot be pursued in the securities actions, as the shares of ChoicePoint Stock in the Plan were not open market purchases.  Accordingly, the named plaintiffs in those class actions do not adequately represent the Plaintiff or the Class herein with respect to

ERISA claims. Moreover, the named plaintiffs in the securities actions may be subject

to defenses, stays of discovery, heightened pleading requirements, and limitations of

liability under the Private Securities Litigation Reform Act of 1995, 15 U S C. § 77z-

1(b), and other statutes and rules that do not apply to the claims asserted herein.

Furthermore, the shareholder plaintiffs in the securities actions lack standing under

ERISA § 502(a), 29 U.S.C. § 1132(a), to bring an action on behalf of the participants

of the Plan for allegations of fiduciary breaches

## VIII. BREACHES OF FIDUCIARY DUTY

### Failure to Prudently Manage the Plan's Assets
### (Breaches of fiduciary and co-fiduciary duties in violation of ERISA §§ 404 and 405,
### 29 U.S.C. §§ 1104 and 1105, by all Defendants)

57      Plaintiff incorporates the allegations contained in the previous paragraphs

of this Complaint as if fully set forth herein

58      At all relevant times, as alleged above, Defendants acted as fiduciaries

within the meaning of ERISA § 3(21)(A), 29 U S C. § 1002(21)(A), by exercising

authority and control with respect to the management of the Plan and the Plan assets

59.      ERISA imposes strict fiduciary duties of loyalty and prudence upon the

Defendants as fiduciaries of the Plan   ERISA states, in relevant part

> [A] fiduciary shall discharge his duties with respect to a plan solely in the
> interest of the participants and beneficiaries and –

20

(A)    for the exclusive purpose of

       (i)    providing benefits to participants and their beneficiaries, and

       (ii)    defraying reasonable expenses of administering the plan;

(B)    with the care, skill, prudence, and diligence under circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims,

(C)    by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D)    in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and Title IV.

ERISA § 404(a), 29 U.S.C § 1104(a).

60    ERISA also imposes explicit co-fiduciary liability on Plan fiduciaries.

ERISA states, in relevant part

In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to the plan shall be liable for a breach *of fiduciary responsibility of another fiduciary with respect to the same* plan in the following circumstances·

       (1)    if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach, or

       (2)    if, by his failure to comply with section 404(a)(1) in the

> administration of his specific responsibilities which gave
> rise to his status as a fiduciary, he has enabled such other
> fiduciary to commit a breach; or
>
> (3)    if he has knowledge of a breach by such other fiduciary,
>        unless he makes reasonable efforts under the circumstances
>        to remedy the breach.

ERISA § 405, 29 U.S.C. § 1105

61      Under ERISA, fiduciaries who exercise discretionary authority or control

over management of the Plan or disposition of Plan assets are responsible for ensuring

that investment options made available to participants under a Plan are prudent.

Furthermore, such fiduciaries are responsible for ensuring that assets within the Plan

are prudently invested.   The Defendants were responsible for ensuring that all

investments in ChoicePoint Stock in the Plan were prudent and are liable for losses

incurred as a result of such investments if they were imprudent.

62.     A fiduciary's duty of loyalty and prudence require it to disregard Plan

documents or directives that it knows harm Plan participants or beneficiaries   ERISA

§ 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).  Thus a fiduciary may not blindly follow

Plan documents or directives that would lead to an imprudent result or that would harm

Plan participants or beneficiaries, nor allow others, including those whom they direct

or who are directed by the Plan, including Plan trustees, to do so

63      The Defendants breached their duties to prudently and loyally manage the

22

Plan assets. During the Class Period, Defendants knew or should have known that

ChoicePoint Stock was not a suitable and appropriate investment for the Plan in light

of ChoicePoint's misrepresentations. Nonetheless, during the Class Period, these

fiduciaries continued to offer ChoicePoint's Stock as an investment option, instead of

other investments Similarly, during the Class Period, these fiduciaries continued to

provide matching contributions in ChoicePoint Stock, instead of in a prudent

retirement investment Moreover, during the Class Period, despite their knowledge of

the imprudence of the investment, the Defendants failed to take adequate steps to

prevent the Plan, and indirectly the Plan's participants and beneficiaries, from suffering

losses as a result of the Plan's investment in ChoicePoint Stock and the matching

contribution in the form of ChoicePoint Stock.

64.     In addition, Defendants breached their co-fiduciary obligations by, among

other failures, knowingly participating in, or knowingly undertaking to conceal, the

failure to prudently and loyally manage the Plan's assets with respect to offering

ChoicePoint Stock as an investment option and matching component of the Plan.

Defendants also breached their co-fiduciary obligations by failing to make any efforts

to remedy their breaches.

65     Defendants further failed to monitor other Plan fiduciaries to ensure that

they were prudently and loyally serving the interests of Plan's participants and, in

connection therewith, failing to remove and replace fiduciaries whom they knew or should have known were acting disloyally and imprudently with respect to the Plan and Plan's assets

66.     Defendants further failed to provide complete and accurate information to the Plan's participants and beneficiaries and to refrain from providing false information or concealing material information regarding the Plan's investment options such that participants could make informed decisions with regard to investment options available under the Plan  Defendants further failed to disclose the true nature of the Company's business in order to allow Plan participants to make informed decisions about their continued investment in ChoicePoint Stock.

67.     Defendants further failed to avoid conflicts of interests and to resolve them promptly when they occurred by continuing to allow ChoicePoint Stock as an investment for the Plan during the Class Period, by failing to engage independent fiduciaries and/or advisors who could make independent judgments concerning the Plan's investment in ChoicePoint Stock and by failing to notify the Department of Labor about the information which made employer stock an unsuitable investment for the Plan

68     Defendants named in this Count were unjustly enriched by the fiduciary breaches described in this Count.

24

69.     As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, Plaintiff and the Plan's other participants and beneficiaries, lost a significant portion of their retirement investment.

70     Pursuant to ERISA § 502(a)(2), 29 U S.C § 1132(a)(2), and ERISA § 409(a), 29 U S C § 1109(a), Defendants in this Count are liable to restore the losses to the Plan caused by their breaches of fiduciary duties alleged in this Count.

## IX. DEFENDANTS' CAUSATION

71     The Plan suffered a loss, and the Plaintiff and the other Class members were damaged, because substantial assets in the Plan were invested in ChoicePoint Stock during the Class Period in violation of the Defendants' fiduciary duties.

72.     At certain times during the Class Period, the Plan held tens of millions of dollars worth of ChoicePoint Stock.     The Plan was substantially invested in ChoicePoint Stock at various times during the Class Period even though ChoicePoint Stock was not a prudent investment for the Plan for the reasons alleged herein.  As a result of Defendants' actions, a substantial portion of the value of the Plan's assets, to the extent the Plan's assets consisted of ChoicePoint Stock, has been destroyed and Defendants are liable for all losses suffered by the Plan and the Participants

73.     As fiduciaries, the Defendants were responsible for the prudence of investments in the Plan during the Class Period unless participants in the Plan

themselves exercised effective and informed control over the assets in the Plan in their individual accounts pursuant to ERISA § 404(a), 29 U S C.

§ 1104(a), and the regulations promulgated under it. Those provisions were not complied with here    Instead of taking the necessary steps to ensure effective participant control by complete and accurate disclosure and regulatory compliance, the Defendants did exactly the opposite   As a consequence, participants in the Plan did not control the Plan's assets that were invested in ChoicePoint Stock, and the Defendants remained entirely responsible for ensuring that such investments were and remained prudent.

74.    The Defendants' liability to Plaintiff for damages stemming from imprudent investments of the Plan's assets in ChoicePoint Stock is therefore established upon proof that such investments were or became imprudent and resulted in losses in the value of the assets in the Plan during the Class Period, without regard to whether or not the participants relied upon statements, acts, or omissions of Defendants.

75    Had the Defendants properly discharged their fiduciary and/or co-fiduciary duties by divesting the Plan of some or all of its imprudent holdings of ChoicePoint Stock and investing the assets in other investments as the Plan's administrators should have determined was in the best interest of the Plan's

26

participants, by appropriately monitoring the actions of the Plan's fiduciaries, and by

replacing breaching fiduciaries with prudent fiduciaries, some or all of the Plan's

losses caused by Defendants' breaches of fiduciary duty would have been avoided

76      Plaintiff further contends that the Plan suffered a loss, and Plaintiff and

the other Class members were damaged, by Defendants' above-described conduct

during the Class Period because of Defendants' acts and omissions in connection with

the prudence of making and maintaining investments in ChoicePoint Stock   Where a

breach of fiduciary duty consists of, or includes, misrepresentations and omissions

material to a decision by a reasonable participant that results in harm to the participant,

the participant is presumed, as a matter of law, to have relied upon such

misrepresentations and omissions to his or her detriment    Here, Defendants' above

described statements, acts and omissions constituted misrepresentations and omissions

that further caused Plaintiff's losses

## X.  REMEDY FOR BREACHES OF FIDUCIARY DUTIES

77      ERISA § 502(a)(2), 29 U S.C. § 1132(a)(2) authorizes a Plan's participant

to bring a civil action for appropriate relief under ERISA § 409, 29 U S.C. § 1109

Section 409 requires "any person who is a fiduciary .   . who breaches any of the   .

duties imposed upon fiduciaries . . . to make good to such Plans any losses to the Plans

"  Section 409 also authorizes "such other equitable or remedial relief as the court

27

may deem appropriate . . . ."

78.     With respect to calculation of the losses to a Plan, breaches of fiduciary duty result in a presumption that, but for the breaches of fiduciary duty, the Plan would not have made or maintained its investments in the challenged investment and, where alternative investments were available, that the investments made or maintained in the challenged investment would have instead been made in the most profitable investment available. In this way, the remedy restores the value of the Plan's assets to what they would have been if the Plan had been properly and prudently administered.

79.     Plaintiff and the Class are therefore entitled to relief from the Defendants in the form of:

        a.      monetary payment from the Defendants to the Plan to make good to the Plan the losses to the Plan resulting from the breaches of fiduciary duties alleged above in an amount to be proven at trial based on the principles described above, as required by ERISA § 409(a), 29 U.S.C. § 1109(a);

        b.      injunctive, monetary, and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA § 502(a)(2) & (3), 29 U S C § 1132(a)(2) & (3);

        c       reasonable attorney's fees and expenses as provided by ERISA § 502(g), 29 U S.C. § 1132(g), the common fund doctrine, and other applicable law;

28

d.      taxable costs; and,

e.      interest on some or all of these amounts as provided by law.

## XI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief as follows:

A.      Certification of this action as a class action pursuant to Fed R Civ P 23;

B.      A Declaration that the Defendants breached their ERISA fiduciary duties to the Plan participants and beneficiaries;

C.      An Order compelling the Defendants to make good to the Plan all injury to the Plan resulting from these breaches of fiduciary duty, including.

a.      restoration to the Plan for losses resulting from imprudent investment of the Plan's assets,

b       restoration to the Plan of all profits the Defendants made through use of the Plan's assets,

c.      restoration to the Plan of all profits that the Plan would have made had the Defendants fulfilled their fiduciary obligations, and,

d       other equitable restitution and appropriate equitable monetary relief.

D.      An Order imposing a Constructive Trust on any amounts by which any Defendant was unjustly enriched at the expense of the Plan as the result of breaches of

fiduciary duty;

E       An Order enjoining Defendants from any further violations of their ERISA fiduciary obligations;

F       An Order permanently removing the Defendants from any position of trust with respect to the Plan and the appointment of independent fiduciaries to administer the Plan;

G.      An Order awarding costs pursuant to 29 U.S C  § 1132(g);

H.      An Order awarding attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the Common Fund Doctrine;

I       An Order awarding such other and further relief as the Court deems equitable and just

[Signature on following page]

30

Dated this the 20<u>th</u> day of May, 2005

Lisa T Millican, Esq.
Ga Bar Number 309046
GREENFIELD MILLICAN P C.
44 Broad Street NW
Atlanta, Georgia 30303
T  404-522-1122
F· 404-577-3600

Kenneth Vianale, Esq.
VIANALE & VIANALE LLP
2499 Glades Road, Suite 112
Boca Raton, Florida 33431
T: 561.392.4750
F· 561.392 4775

Thomas J  McKenna, Esq.
GAINEY & MCKENNA
485 Fifth Avenue, 3rd Floor
New York, NY 10017
T  212-983-1300
F: 212-983-0383

Ronen Sarraf, Esq
Joseph Gentile, Esq.
SARRAF GENTILE LLP
111 John Street, 8th Floor
New York, NY 10038
T: 212-433-1312
F· 212-406-3677

***Attorneys for Plaintiff***

31